# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **Z.M. and J.M.**

**No. 19-0656** (Webster County 18-JA-36 and 18-JA-37)

**FILED**
**April 6, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother A.M., by counsel Andrew Chattin, appeals the Circuit Court of Webster County's June 25, 2019, order terminating her parental rights to Z.M. and J.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Mary E. Snead, filed a response on behalf of the children in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2018, the DHHR filed an abuse and neglect petition against petitioner and custodian D.G. The petition alleged that petitioner and D.G. engaged in domestic violence against each other and abused the children. According to the petition, Z.M. disclosed that both D.G. and petitioner spanked and slapped him. A DHHR worker observed bruising on Z.M.'s face. Petitioner denied any physical altercations between herself and D.G., and both denied causing the children's bruising. Petitioner blamed the children playing with toys, while D.G. said it was from the children hitting each other in the face with sticks. The worker also observed Z.M. had cavities on both front teeth. Dental records later confirmed he had gone two years without a dentist appointment.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

Petitioner also acknowledged J.M. suffered from ADHD, but medical records showed he missed his last two medical appointments. As such, the DHHR alleged that petitioner failed to provide the children with a suitable home by engaging in domestic violence and failing to provide proper medical and dental care. Thereafter, the circuit court ratified the children's removal and awarded petitioner supervised visitation, provided she remained drug free.

In August of 2018, the circuit court suspended petitioner's visitation after she tested positive for methamphetamine and amphetamine. The DHHR subsequently filed an amended petition, adding petitioner's substance abuse to the list of allegations. In September of 2018, the circuit court adjudicated petitioner as an abusing parent because of domestic violence in the children's presence, her substance abuse, and her failure to provide a suitable home for the children. In November of 2018, the circuit court granted petitioner a six-month post-adjudicatory improvement period that required her to have no contact with D.G.; establish a fit and suitable home within thirty days, that was not with D.G.'s mother; participate in parenting classes; maintain employment; participate in random drug screens; and participate in supervised visitation with the children.

The DHHR filed a motion to revoke petitioner's improvement period and terminate her parental rights in February of 2019. The DHHR alleged that petitioner was noncompliant with several terms of her improvement period. Notably, the DHHR alleged that petitioner's residence was "not apt and suitable because of being unkempt," she missed several parenting classes, she failed to appear for eight of her sixteen random drug screens, and she was staying at D.G.'s mother's house, in direct contravention of the terms and conditions of her improvement period. The circuit court denied the DHHR's motion. Following multiple review hearings, petitioner's improvement period was permitted to continue. In May of 2019, the circuit court found that petitioner's improvement period had expired and set the matter for disposition.

In June of 2019, the circuit court held a dispositional hearing. Prior to the dispositional hearing, the DHHR filed a new motion to terminate petitioner's parental rights. The DHHR's motion renewed its earlier allegations and added that petitioner was behind on rent payments, moved out of her home without informing her caseworker, failed to maintain contact with the DHHR, refused to let the caseworker visit petitioner's new home, was fired from her job for missing work, was suspected of maintaining contact with D.G., and lied about staying with a friend on various occasions. The DHHR also suspended petitioner's visitation with the children after she refused to produce a valid sample for a drug screen. After the testimony of several witnesses, the circuit court found that petitioner had "not complied with [c]ourt orders," "failed to maintain[] a fit and suitable home," "not complied with the random drug testing as ordered," "admitted . . . that she . . . lied in [c]ourt," and "continued to have contact with [D.G]." Based on this evidence, the circuit court found that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect, given that petitioner failed to follow through with the family case plan and associated services. The circuit court further found that termination of petitioner's parental rights was in the children's best interests. Accordingly, the circuit court terminated

petitioner's parental rights to the children.[2] It is from the June 25, 2019, dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

Petitioner's sole assignment of error on appeal is that the circuit court erred in terminating her parental rights because she substantially complied with her improvement period and corrected the conditions of abuse and neglect. According to petitioner, the only issues that needed to be corrected were domestic violence and substance abuse. This argument, however, not only misstates the record but also ignores the myriad of issues for which she was adjudicated. When petitioner was granted an improvement period in November of 2018, one of the conditions she agreed to was that she "establish a fit and suitable home, not with [D.G.]'s mother" within thirty days. Another term was that petitioner "shall obtain employment and/or remain gainfully employed." In January of 2019, however, the DHHR filed its first motion to revoke petitioner's improvement period and terminate her parental rights, in part, because her residence was "unkempt," and she was located at and suspected of staying at D.G.'s mother's residence. Although the circuit court allowed petitioner to continue in her improvement period, it was later determined that petitioner failed to pay her rent, had moved out of her home and into a new residence, was not seen at her new residence despite multiple trips by the DHHR, and later disclosed her new home lacked water and she had been staying in a tent. Petitioner also refused to disclose the tent's location and refused the DHHR's several attempts to tour her new residence. The DHHR employee then volunteered to help petitioner find somewhere else to live, but petitioner declined the assistance. Petitioner also disclosed she owed an electric bill in excess of $700.00 and was unable to receive electric in her name. Additionally, petitioner was fired from her job, where her supervisor said she was scheduled for over eighty hours a month and could have received more work, but she was not dependable. When the DHHR employee was informed petitioner was now working at a diner but lacked enough

---

[2]According to the parties, Z.M. has achieved permanency by being placed in the custody of his nonabusing father. J.M.'s father's parental rights were terminated and the permanency plan for J.M. is adoption or, concurrently, guardianship by his grandmother, with whom he is currently living.

weekly pay to support herself and the children, the employee suggested she was eligible for low income housing. Petitioner denied this additional offer of assistance and reported staying with a friend, who said petitioner never stayed with her.

Despite all this, petitioner argues "only her desperate financial situation" prevented her from obtaining suitable housing. Further, petitioner argues "her alleged continued relationship" with D.G. "was never proven." While petitioner is correct that the record shows that she was, at times, compliant with the terms of her improvement period and that the circuit court permitted the improvement period to continue after multiple review hearings, she ignores the fact that her compliance was sporadic and she misrepresented herself to the DHHR and the circuit court on several occasions. Even more importantly, as noted above, petitioner not only failed to comply with various services but failed to communicate with the DHHR about her living situation and—in spite of petitioner's claims of a "desperate financial situation"—declined additional assistance to obtain housing offered to her. As such, the record is clear that despite several continuances of her improvement period, petitioner failed to maintain her compliance throughout the proceedings.

Further, while it may be true that petitioner initially obtained housing and employment during the improvement period, petitioner later lost both of those as a result of nonpayment of rent and her failure to show up for work. Although petitioner was allowed to complete her improvement period, the evidence before the circuit court demonstrates that her noncompliance spanned several months. As this Court has held,

> "[a]t the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child." Syllabus point 6, *In re Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991).

Syl. Pt. 3, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). In short, petitioner's assertion that she substantially complied with the improvement period ignores the fact that her lack of suitable housing, inability to stay employed, failure to complete drug screens, and lack of candor with the circuit court were not remedied sufficiently to justify the return of the children to her care.

Finally, based on the evidence of petitioner's sporadic compliance and, especially, her failure to attend all of her parenting classes, comply with drug testing, or even remain in regular contact with the DHHR in the month prior to the dispositional hearing, the circuit court found that petitioner failed to follow through with the DHHR's rehabilitative services. Importantly, this constitutes a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future under West Virginia Code § 49-4-604(c)(3). On appeal, petitioner asserts that the circuit court's decision to terminate was "improper when the [p]arent is making substantial progress toward reunification." We disagree and find that the circuit court's order is specific and enumerates several areas where petitioner failed to make progress as the basis for the termination of petitioner's parental rights. The circuit court's findings are based on substantial evidence that petitioner was never fully compliant in her improvement

4

period and failed to complete many of the services offered. Moreover, the circuit court found that termination of petitioner's parental rights was in the children's best interests. According to West Virginia Code § 49-4-604(b)(6), circuit courts may terminate parental rights upon these findings. Further, we have long held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). The record shows that the circuit court had ample evidence upon which to base these findings, and we decline to disturb them on appeal.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 25, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: April 6, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison